District of Columbia Redevelopment Land Agency; slum clearance and urban renewal; rehabilitation; loan program; summary judgment inappropriate; questions of fact and law; remand to trial division. — On July 25, 1980 the court entered the following order:
*766 Before Friedman, Chief Judge, Kashiwa and Smith, Judges.
This case concerns the extent of defendant’s liability under 42 U.S.C. § 1452b. The case is before the court on defendant’s motion for summary judgment. For the reasons set out below, there exists a dispute as to facts material to disposition of defendant’s motion. We therefore dismiss defendant’s motion. However, to properly frame the issues, we also define the scope of plaintiffs potential recovery.
Pursuant to 42 U.S.C. § 1452b, the Secretary of the Department of Housing and Urban Development (HUD) was authorized to make low-interest rehabilitation loans, commonly known as "Section 312 loans,” to the owners and tenants of certain designated properties. The goal was to encourage such persons to rehabilitate their properties by affording them the financial means to do so. In carrying out this function, the Secretary of HUD was authorized "to delegate to or use as his agent any Federal or local public or private agency or organization to the extent he determines appropriate and desirable to carry out the objectives of [42 U.S.C. § 1452b].” 42 U.S.C. § 1452b(f). The Secretary designated the District of Columbia Redevelopment Land Agency (RLA) to assist HUD in making such loans within the District of Columbia. This was accomplished by having HUD and RLA enter into a contract denominated "Agreement for Public Body Approval of Section 312 Rehabilitation Loans” (the Agreement). Section 1 of the Agreement in relevant part provided that:
* * * The purpose of this Agreement is to extend to the Public Body authority to approve, in accordance with the regulations, policies, and requirements (hereinafter called "Regulations”) of the Secretary, certain applications for Section 312 loans, subject to verification by the Secretary of fund availability for an approved loan.
RLA was a "Public Body” within the meaning of this Agreement. HUD prepared a Rehabilitation Financing Handbook (Handbook) which prescribed the policies, procedures, and requirements to be followed by public bodies in, among other things, approving loans. The scope of RLA’s authority to act as HUD’s agent is therefore defined and *767 limited by the Agreement and Handbook considered together.
To the extent here relevant, the Section 312 loan program in the District of Columbia apparently functioned as follows. If an eligible homeowner was interested in applying for such a loan, RLA would first prepare a construction contract. This document contained a description of the rehabilitation work to be done, indicated the source of payment would be a Section 312 loan, and also incorporated by reference a document entitled "General Conditions for Rehabilitation, Part I.” Copies of the contract were sent to contractors interested in performing such rehabilitation work. The contractors would in turn indicate the price at which they would perform the described work. After such bids had been received, RLA would aid the homeowner in selecting an acceptable contractor. RLA acting on behalf of HUD pursuant to the delegation of authority in Section 2 of the Agreement would next approve the homeowner’s application for the Section 312 loan.[1] However, Section 2 also provided such approval was not valid until HUD had first determined funds were available from which to make the loan and had notified RLA to that effect. Section 3 of the Agreement required such notification to be in writing.[2] Thus, only after receipt of such written notification would loan approval become effective and a valid and enforceable loan arise between HUD and the homeowner. RLA would next (1) inform the homeowner his loan was approved and (2) have the homeowner and the selected contractor execute the construction *768 contract. Following contract execution, actual rehabilitation work would commence.
Apparently in accordance with this procedure, plaintiff entered into a total of 14 such contracts. Work was allegedly performed under only nine of the contracts. Per plaintiff, with respect to these nine, pursuant to oral and written change orders authorized by RLA, plaintiff was directed to and did perform additional work not originally called for under such contracts. Plaintiff insists it has not been paid for such additional work and seeks to recover payment from HUD. Plaintiff also contends that because it was not paid for this work it lacked sufficient funds to even commence performance on the other five contracts. Plaintiff therefore also seeks damages for its inability to perform these contracts. Because of the interdependent nature of plaintiffs claims and without passing on their merits, it can potentially recover with regard to the latter five contracts only if HUD was in fact obligated to pay for the additional work allegedly performed.
Assuming plaintiff did perform additional work, it is possible for it to recover at least in part. Each of the contracts signed by plaintiff apparently incorporated by reference General Conditions for Rehabilitation, Part I (General Conditions). Section 108.C of such General Conditions authorized additional work to be performed pursuant to change orders approved by RLA and set forth the procedure to be followed by RLA in approving such orders. Section 108.C was arguably promulgated pursuant to a delegation of authority from HUD. As previously indicated, the scope of authority delegated to RLA was in part defined by the Handbook. Chapter 19 of the Handbook set out the general conditions which public bodies were authorized to include in rehabilitation construction contracts. Chapter 19, Section 3 in part states that "[t]he Public Body [RLA] may add other provisions to the general conditions * * * to assure that the contract clearly sets forth the requirements for the construction work to be done.” Section 108.C of such General Conditions is arguably described within this language. If so, then when RLA promulgated Section 108.C, it did so under an express delegation of authority. This also suggests that to the extent RLA approved additional work *769 in accordance with Section 108.C it acted on behalf of HUD, making HUD potentially liable to pay for such work. The initial factual difficulty is the lack of facts necessary to determine whether Chapter 19, Section 3 is a delegation of authority broad enough to authorize a provision such as Section 108.C, and if so, whether RLA’s approval in accordance with Section 108.C would obligate HUD to pay for the work.
A further difficulty is ascertaining whether any of the alleged additional work was performed under change orders approved by RLA in accordance with Section 108.C. Assuming RLA had authority to approve additional work and thereby obligate HUD to pay for it, HUD would be so bound only to the extent Section 108.C was complied with. If RLA approved change orders not complying with Section 108.C, it would be acting outside the scope of its delegated authority, making HUD not liable to pay for such work. E.g., Federal Crop Insurance Corp. v. Merrill, 332 U. S. 380 (1947). Though not exhaustive of the procedure to be followed, only written change orders could be approved by RLA.[3] Section 108.C.1. Furthermore, plaintiff stated in its petition that the additional work caused it to incur additional costs not covered by the original contract price. Since plaintiff was, and remains, unwilling to itself absorb this increase, plaintiff is therefore in the posture of seeking an increase in the contract price. Section 108.C.2(d) in part indicated that if a change order required an increase in the contract price, RLA could approve it only if the homeowner had sufficient funds remaining under the loan or grant made to the homeowner to cover the cost of the work to be performed under the change order. With respect to each particular contract, the change orders under which plaintiff could potentially recover could therefore only have been properly approved by RLA to the extent RLA had not yet disbursed to plaintiff the full amount of the loan or grant proceeds. Only to that extent would there be sufficient funds under the loan or grant to cover the cost of the additional work. In addition, in determining the extent of *770 then available loan proceeds, reference must be made to the amounts of the loans as originally approved by HUD. While it may have been possible to increase the amount of the loans, and thereby increase the undisbursed portion available, this could occur only if HUD sent RLA written notice of funds available to cover the loan increase. Agreement, Sections 2 and 3. However, since this notice was never sent, there is no way the loans could have been increased above the originally approved amounts. Plaintiff can therefore potentially recover only for work performed under written change orders and only to the extent the cost of the additional work did not exceed the undisbursed portion of the grant or original loan proceeds. Only to this extent could Section 108.C have been complied with. Unfortunately, we lack the facts necessary to determine to what extent, if any, change orders authorizing the additional work met this two-fold requirement.
In an attempt to avoid having to reach the merits, defendant seeks to raise the bar of sovereign immunity. Defendant insists that in carrying out the Section 312 loan program HUD was acting in its sovereign capacity and is therefore immune from suit. However, 42 U.S.C. § 1452b seems to expressly waive such immunity. 42 U.S.C. § 1452b(e) provides that "[i]n the performance of, and with respect to, the functions, powers, and duties vested in him by this section, the Secretary shall have * * * the functions, powers, and duties set forth in section 1749a of Title 12 * * Subsection (c)(3) of section 1749a of Title 12 states that in the performance of his duties the Secretary may "sue and be sued.” By incorporating by reference this latter provision into 42 U.S.C. § 1452b, Congress apparently meant to waive HUD’s sovereign immunity with respect to at least certain aspects of the Section 312 loan program. Defendant in its briefs and at oral argument totally failed to mention this apparent waiver or to show its limitations, if any. Inexplicably, plaintiff also failed to rely on these statutory provisions. Because of the importance of this potential waiver, and in view of the total lack of consideration by the parties, we feel it appropriate to have the benefit of additional briefing before we address its scope. *771 We therefore cannot at this time grant defendant’s motion on this ground.
We note the above discussion does not cover all the arguments that can be or have been made in this case, and we in no way mean to limit the arguments the parties may make on remand. The parties may renew all their arguments after appropriate proceedings have been completed in the trial division. We do not pass on the merits of plaintiffs claim but, rather, deny defendant’s motion for summary judgment because of disputed material facts.
it is therefore ordered that defendant’s motion is denied without prejudice and the case returned to the trial division for determination of the following issues:
1. RLA prepared General Conditions which were apparently incorporated into all the contracts plaintiff entered into. Section 108.C of such General Conditions sets out the procedure to be followed in approving change orders. How many of plaintiffs contracts incorporated these General Conditions? Did HUD either approve, ratify, or otherwise authorize RLA to include Section 108.C in the contracts plaintiff entered into?
2. What portion, if any, of the compensation sought by plaintiff is attributable to work performed pursuant to written change orders which were entered into and approved by RLA in compliance with the procedures required by Section 108.C, including the requirement of undisbursed grant or loan proceeds sufficient to cover the cost of the additional work?
3. To the extent, if any, that plaintiff performed work pursuant to written change orders which complied with Section 108.C, was RLA acting as HUD’s agent when RLA approved such change orders under Section 108.C.2?
it is additionally ordered that the parties shall brief and the trial judge shall discuss the impact, if any, of 42 U.S.C. § 1452b(e) and 12 U.S.C. § 1749a(c)(3) on HUD’s possible sovereign immunity.

 Section 2 provided that:
"During the term of this Agreement, the Public Body shall have final authority to approve applications for Section 312 loans with respect to residential and mixed-use property, which will contain one to four dwelling units after rehabilitation, and which is located in an area with respect to which the Public Body has authority to process such loans, as described in Section 1 hereof. The Public Body shall exercise such loan approval authority with respect to property in all such areas which come under its jurisdiction during the term of this Agreement. However, no loan approval under authority of this Agreement shall be valid until the Secretary has determined that funds are available therefor, and has notified the Public Body thereof.”

 Section 3 provided that:
"Upon receipt of the documentation required by the Secretary’s Regulations to be submitted with respect to Section 312 loans approved by a Public Body, the Secretary shall promptly notify the Public Body in writing whether sufficient funds are available for the approved loan.”

 We note plaintiff strenuously argues oral change orders can be approved in compliance with Section 108.C. We, however, find plaintiffs arguments unconvincing.